**PIERCE CONTRACTORS, Inc., Appellant,**

v.

**Henry D. GREEN, Appellee.**

**No. 7067.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 17, 1955.

Decided Dec. 8, 1955.

**64**

Yancey A. McLeod, Columbia, S. C. (E. McLeod Singletary and McLeod & Singletary, Columbia, S. C.; on brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and R. DORSEY WATKINS, District Judge.

## PER CURIAM.

The principal question on this appeal is whether there was substantial evidence tending to show that the impaired physical condition of Henry D. Green, the appellee in this court and the plaintiff below, was due to an automobile accident in which he was involved on May 18, 1953. On the afternoon of that day he was seated in the back seat of his automobile which was stopped in observance of a sign at a road intersection near St. Matthews, South Carolina, facing west. His wife, who was driving, and his daughter occupied the front seat. While they were waiting, the defendant's vehicle, a flat bottom truck without fixed sides, approached from the south and rounded a cut-off curve provided for eastbound traffic in such a fashion that its load of 114 pieces of plywood was thrown from the vehicle onto the highway; and several pieces weighing 55 pounds each struck the plaintiff's car with such force that its left side and rear were damaged; the frame was bent, the doors on the right side would not function and the right rear wheel was bent so that it had to be replaced before the car could be moved.

The case was submitted to a jury which found that the accident was due to the negligence of the driver of the truck, and rendered a verdict for the plaintiff for $29,000 actual damages and $500 punitive damages. This finding as to the negligence of the defendant is not challenged in this court but only the amount of the verdict for actual damages, chiefly on the ground that the injuries of which the plaintiff complains were not caused by the accident.

Green was not hit by the plywood but was badly shaken by the impact

Carlisle Roberts, Columbia, S. C. (W. Croft Jennings and Roberts & Jennings, Columbia, S. C., on brief), for appellant.

of the blow upon his car and sustained bumps under his left eye and on his head. He did not realize at the time that he had been severely injured. He was driven to St. Matthews and later in the day his car was brought to him and he was able to drive slowly to his home in Columbia. Examination of the record, however, satisfies us that the evidence taken most favorably to the plaintiff, as it must be on this appeal, affords substantial support for his claim that the injuries he received were of a grave character. Upon his return to his home in Columbia on the evening of the accident he called his family doctor and was under constant treatment for the next five weeks. X-rays were taken on two occasions and an orthopedic surgeon was consulted. Hospitalization for tests to determine whether there was a brain injury was recommended but the plaintiff declined as he feared that injurious results might follow the kind of brain exploration that was contemplated.

His family physician made two reports in 1953 and one in 1954 which were put in evidence. Therein the opinion was expressed that the plaintiff was suffering from a brain injury or perhaps from a herniated disc in the cervical region. Although the plaintiff was able during this period to give some attention to business, he suffered from headaches and pains in the neck. Marked changes for the worse in his physical and mental state were noted by his physician, and there was no improvement as time went on. Finally two or three weeks before the trial on June 14, 1955 the plaintiff was given an extensive examination, including an electroencephalogram or brain wave test, by a qualified neuro-surgeon who provided him with a neck brace to produce tension of the neck. The surgeon testified at the trial that in his opinion the plaintiff was suffering from one or more herniated cervical discs, that he was likely to grow worse and to become paralyzed, unless he submitted to surgery, and that even after surgery he would not make a full recovery. The surgeon was of the opinion that the plaintiff's condition at the time of the trial was pretty nearly 100 per cent disability and that it was caused by the accident.

The case for the plaintiff was severely criticized by the defendant on various grounds. It was said that the injury was first diagnosed by plaintiff's physicians as a brain injury, and that the theory of injury to the spine was not advanced until the eve of the trial; that the family doctor was a personal friend of the plaintiff and therefore prejudiced in his favor and that the tests of the neuro-surgeon a short time before the trial were all subjective; that the symptoms then observed could have been produced by arthritis and that arthritis was indicated by the X-rays taken of the plaintiff immediately after the accident occurred; and that the plaintiff was not a well man at the time of the accident but had been retired from the army for an injury to his lower back received in 1943. In addition certain motion pictures taken by detectives employed by the defendant and introduced in evidence showed considerable physical activity on the part of the appellee in the operation of his business in 1954, indicating that the extent of his injuries was exaggerated in the testimony introduced on his behalf.

These considerations, however, obviously go to the weight of the testimony which was submitted to the jury by both parties to the case. It should be added that there was direct testimony that the examination of the plaintiff shortly before the trial was not exclusively subjective but was sufficient to support the unfavorable diagnosis, and also that the injury received in the army did not affect the cervical region of the plaintiff's spine.

Objection was also made by the defendant to a statement in the charge to the jury that as a corporation can only act through agents, it is bound by their wrongful acts performed within the scope of their employment, for otherwise a corporation could kill or maim people or take their property with impunity. We do not think that this statement justifies a reversal. While it was lurid to an

unusual extent, there is no reason to believe that it aroused a prejudice against the building contractors in this case who were carrying on their business in corporate form.

Affirmed.